IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **BIRMINGHAM EMERGENCY COMMUNICATIONS DISTRICT,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**TW TELECOM HOLDINGS, INC., et al.** )<br>)<br>**Defendants.** ) | **CIVIL ACTION NO:<br>2:15-cv-00245-AKK** |

## FIRST AMENDED COMPLAINT

COMES NOW Plaintiff Birmingham Emergency Communications District ("the District") and submits this First Amended Complaint against Defendants tw telecom holdings inc., currently known as Level 3 telecom holdings, llc; tw telecom l.p., currently known as Level 3 Telecom, L.P.; tw telecom management co. llc, currently known as Level 3 Telecom Management Co, LLC; and tw telecom of alabama llc, currently known as Level 3 Telecom of Alabama, LLC (collectively referred to as "the Defendants").

## SUMMARY OF COMPLAINT

1.   The District is an Emergency Communications District ("ECD") that provides critical emergency 911 services to citizens in Birmingham, Alabama and others who visit and travel through Birmingham.  These services, like the services of other ECDs, are a central component of the public safety and emergency

preparedness system.  The District's 911 services allow emergency response personnel to be promptly directed to the scenes of emergencies, dangers, and disasters; they have, thus, saved countless lives and provided invaluable benefits to the community.

2.  The District's 911 services are principally funded by emergency telephone service charges ("911 Charges"), which are collected from users of business and residential telephone services.

3.  Defendants provide business telephone service through what is known as Voice over Internet Protocol service or "VoIP."  For the period in question, Alabama law required the Defendants to bill, collect, report, and remit 911 Charges for every ten-digit access number provided to customers with VoIP or similar telephone service.

4.  Defendants did not collect 911 Charges on their telephone service in accordance with Alabama law.  To the contrary, Defendants billed, collected, and remitted 911 Charges for only a fraction of the ten-digit access numbers provided to VoIP customers.  In so doing, they have deprived the District of the revenue needed to provide critical, lifesaving, emergency services.  By billing and collecting less than the required amount of 911 Charges, Defendants were able to offer their services at a lower cost to customers and, thereby, gained a competitive advantage over other telephone service providers who comply with the law.

5. The District seeks recovery of damages related to the unpaid 911 Charges, along with interest, costs, and expenses as allowed by law.

## THE PARTIES AND VENUE

6. The Birmingham Emergency Communications District is a political and legal subdivision of the State of Alabama with the power to sue and be sued under Alabama Rule of Civil Procedure 17(b). It was created by the governing body of the City of Birmingham, Alabama and is considered a citizen of the State of Alabama for jurisdictional purposes.

7. tw telecom holdings inc. is a citizen of the states of Delaware and Colorado. It and its affiliates, which include the other Defendants named herein, collectively provide wired telephone service in Birmingham, Alabama.

8. tw telecom l.p. is a citizen of the states of Delaware and Colorado. It and its affiliates, which include the other Defendants named herein, collectively provide wired telephone service in Birmingham, Alabama.

9. tw telecom management co. llc is a citizen of the states of Delaware and Colorado. It and its affiliates, which include the other Defendants named herein, collectively provide wired telephone service in Birmingham, Alabama.

10. tw telecom of alabama, llc is a citizen of the states of Delaware and Colorado. It and its affiliates, which include the other Defendants named herein, collectively provide wired telephone service in Birmingham, Alabama.

11. Although separate legal entities, the Defendants are part of the tw telecom family of companies that work together to deliver telephone service to users in Birmingham, Alabama and throughout the United States.

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because Plaintiff and Defendants are citizens of different states, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

## FACTUAL ALLEGATIONS

13. Alabama has enacted the Emergency Telephone Services Act, Alabama Code § 11-98-1, *et seq.* ("the ETSA"), providing for the creation of ECDs, such as the District, in order to establish local emergency telephone service commonly referred to as "911 Service." The ETSA provides for the funding of these ECDs by assessing a charge on exchange access lines and VoIP telephone service.

14. At all times relevant to this action, the District assessed valid 911 Charges on all business and residential telephone service in Birmingham.

15. The District, under the supervision of its board, operates extensive facilities staffed by trained personnel 24 hours a day, 7 days a week, who receive 911 telephone calls and transmit emergency information to the proper authorities.

16. The District relies on 911 Charges to provide emergency, often life-saving, services.

17.     Defendants are affiliated companies that work together to collectively provide VoIP telephone service to customers in Birmingham.

18.     Prior to October 1, 2013, the ETSA required telephone service suppliers, such as Defendants, to bill, collect, and remit 911 Charges to the District for every 10-digit access number assigned to VoIP users, excluding those provided to a person or entity otherwise exempt from taxation. *See* Ala. Code § 11-98-5.1 (pre-October 1, 2013 amendment).

19.     The Defendants failed to bill, collect, and remit 911 Charges in accordance with law. In particular, the Defendants did not bill, collect, and remit a 911 Charge to the District for every 10-digit access number that they provided to users of VoIP technology.

20.     During a recent audit of the Defendants by the District, the Defendants have contended that their telephone service in Birmingham does not qualify as VoIP service. This contention is, however, incorrect. The Federal Communications Commission (FCC) defines "Interconnected VoIP Service" as follows:

> **Interconnected VoIP Service:** A service that: (1) enables real-time, two-way voice communications; (2) requires a broadband connection from the user's location; (3) requires Internet-protocol compatible customer premises equipment; and (4) permits users generally to receive calls that originate on the *public switched telephone network* and to terminate calls to the *public switched telephone network*. *See* 47 C.F.R. § 9.3.

> Interconnected VoIP service uses IP packet format to transmit voice calls *between* the end-user customer's specialized equipment (such as an IP telephone, IP PBX, or TDM-to-IP converter device that is attached to an ordinary telephone or conventional PBX) and the telecommunications network. ***By contrast***, local exchange telephone service uses analog or Time Division Multiplexing (TDM) to transmit voice calls *between* the end-user customer's device and the *public switched telephone network*. Note that some end-user customer devices (such as an IP PBX or conventional PBX) can be configured to connect to both local exchange telephone service and interconnected VoIP service, but the two types of service connections are distinct. A single end-user service connection ***cannot be both*** interconnected VoIP service and local exchange telephone service at the same time.

*See* Glossary of Terms, FCC Form 477 Instructions, located at: www.fcc.gov/form477/477inst.pdf, p. 35.

21. The FCC's explicit clarification between traditional (or TDM) local phone service and VoIP phone service makes clear that the critical differentiating factor is the type of circuit used to deliver voice between the public telephone network and the customer's onsite equipment. In other words, per the FCC, a telephone system is VOIP even though it uses traditional telephones and traditional phone PBXs if it uses an IP circuit to connect the customer's equipment to the telephone company.

22. Most, if not all, of the Defendants' service in Birmingham qualifies as "Interconnected VoIP Service" (and did so prior to October 1, 2013).

6

23. Section 11-98-5.1(c) of Alabama's ETSA provides for an even broader interpretation of VoIP service than the FCC. That section, which applies to the time period at issue, states: "It shall be the duty of each provider of <u>VoIP or similar service</u> to collect the [911 charge] for each 10-digit access number assigned to the user and to remit such fee as provided in Section 11-98-5." *See* Ala. Code § 11-98-5.1(c) (pre-October 1, 2013 amendment) (emphasis added). Thus, even if the service was provided through technology "similar" to VoIP, then the provider had a duty to bill, collect, and remit a 911 charge on every telephone number.

24. The Defendants did not comply with Alabama law applicable to VoIP or similar service. The Defendants provided thousands of 10-digit access numbers to customers utilizing VoIP or similar service for which the Defendants did not bill, collect, or remit 911 charges. The 911 charge rate for business telephone service in Birmingham prior to October 1, 2013 was $5.08 per month for each 10-digit access number provided to users of VoIP service. Therefore, the Defendants' caused the District to suffer a substantial financial loss.

25. Furthermore, by not billing and collecting 911 Charges for each 10-digit telephone number provided to VoIP users, the Defendants were able to offer lower cost service to the detriment of the District and, as a result, gained a competitive advantage over other telephone service providers that followed the law. The Defendants' actions deprived the District of critical financial resources.

26. The District conducted an audit of the Defendants' 911 charge remittances for the period ending September 30, 2013. Although the Defendants refused to provide all the requested information, the District informed the Defendants that there was a substantial shortfall in their 911 Charge billings and remittances. The Defendants have, however, refused to take action to correct the situation.

27. The District's claims in this case relate to the Defendants' obligations to bill, collect, and remit 911 Charges before October 1, 2013.

## COUNT I
### (Violation of the ETSA)

28. The District repeats and reavers the foregoing allegations as if fully set forth herein.

29. As set forth herein, the Defendants have failed to bill, collect, and remit 911 Charges in accordance with the ETSA.

30. As a proximate consequence of the Defendants' violation of the ETSA, the Districts have suffered damages.

WHEREFORE, the District demands judgment against the Defendants for compensatory and punitive damages in an amount to be determined by a struck jury plus interest, attorneys' fees and costs.

## COUNT II
### (Negligence/Negligence *Per Se*/Gross Negligence/Recklessness)

31. The District repeats and reavers the foregoing allegations as if fully set forth herein.

32. The Defendants were under statutory and common law duties to bill, collect, and remit to the District the proper amount of 911 Charges.

33. The Defendants were negligent, grossly negligent, or reckless in failing to exercise reasonable care and breached these duties.

34. The Defendants' negligent, grossly negligent, or reckless breaches of their duties to exercise reasonable care proximately caused injury to the District, including loss of critical financial resources.

35. The Defendants' breach of the statutory duties imposed by Alabama law also constitutes negligence *per se*.

36. The District is within the class of persons that the ETSA was designed to protect and benefit as they are intended recipients of the 911 Charges and relied upon payment of those charges to fund essential emergency service operations.

37. The injuries of the District are the precise injuries that the ETSA was designed to prevent, and those injuries hinder and impair the ability to provide 911 services in furtherance of the laws' stated purposes.

WHEREFORE, the District demands judgment against the Defendants for compensatory and punitive damages in an amount to be determined by a struck jury plus interest, attorneys' fees and costs.

## COUNT III
### (Breach of Fiduciary Duty)

38.     The District repeats and reavers the foregoing allegations as if fully set forth herein.

39.     During all relevant times, the Defendants were under a fiduciary duty to bill, collect, and remit to the District the 911 Charges upon each 10-digit telephone number supplied to users of VoIP technology.  These fiduciary duties were imposed upon the Defendants by Alabama Code § 11-98-1, *et seq.*, and § 11-98-5.1 in particular, the laws of other states, as well as by uniform common law in Alabama and other states.

40.     The fiduciary duty is derived from the special and confidential relationship between the District and the Defendants.

41.     The fiduciary relationship gives rise to a duty of care on the part of the Defendants whereby the Defendants were required to act with the utmost good faith, loyalty and honesty toward the Districts.  The ETSA creates a system to fund 911 emergency services that require ECDs, such as the District, to rely upon telecommunication suppliers, such as the Defendants, to act in good faith and with honesty in billing, collecting, and remitting the appropriate 911 Charges.

42. The District had to rely on the Defendants to act in good faith and with honesty because the District is not aware of and had no way of calculating the number of ten-digit access numbers provided to customers of VoIP or similar service. Therefore, the District could not know the actual amount of 911 Charges that should be paid. The Defendants have sole and exclusive control of that information.

43. As the sole party possessing the information needed to determine the correct amount of 911 Charges that should have been paid, the Defendants were in a dominant position in relation to the District. As the Defendants determined the amount of 911 Charges received by the District, and as those 911 Charges were the principal source of operating capital funds, the Defendants effectively exercised a level of control over the District.

44. In relying on the Defendants to perform their statutory and common law obligations, the District trusted that the Defendants would act with utmost good faith, loyalty, and honesty toward the District.

45. The Defendants knowingly breached their fiduciary duties and the standard of care.

46. The Defendants' breach of their fiduciary duties of the standard of care injured the District, proximately causing a loss of significant revenue needed to fund essential emergency services.

WHEREFORE, the District demands judgment against the Defendants for compensatory and punitive damages in an amount to be determined by a struck jury plus interest, attorneys' fees and costs.

### COUNT IV
### (Wantonness)

47. The District repeats and reavers the foregoing allegations as if fully set forth herein.

48. The Defendants' conduct as described herein constitutes wantonness. The Defendants acted with a reckless disregard for the wellbeing of the District with knowledge that the underpayment of 911 Charges would likely cause injury or damage.

49. The Defendants' wanton behavior proximately caused injury and damages to the District, including the loss of operating and capital funds and an impairment of the ability to provide 911 services.

WHEREFORE, the District demands judgment against the Defendants for compensatory and punitive damages in an amount to be determined by a struck jury plus interest, attorneys' fees and costs.

### COUNT V
### (Negligent Misrepresentation/Fraud)

50. The District repeats and reavers the foregoing allegations as if fully set forth herein.

51. In connection with their duty to bill, collect and remit 911 Charges, the Defendants prepared and submitted to the District a signed "E-911 Service Fee Transmittal Form" each month along with their 911 Charge remittance.

52. Through the E-911 Service Fee Transmittal Form, the Defendants represented the "number of lines" that the Defendants provided to their customers in the District, along with the total amount of 911 Charges due for that particular month.

53. In particular, the Defendants misrepresented the "number of lines" on each of their E-911 Service Fee Transmittal Forms. The chart below shows the disparity between the number of lines reported by the Defendants on their E-911 Service Fee Transmittal Forms and the District's calculation of the actual number of lines based upon data provided by the Defendants during a recent audit:

| Date of Transmittal Form | Reporting Period | Represented # of Lines | District's calculation of actual # of Lines |
|---|---|---|---|
| 11/06/2011 | 10/2011 | 4622 | 11915 |
| 12/06/2011 | 11/2011 | 4746 | 11930 |
| 01/06/2012 | 12/2011 | 4553 | 11828 |
| 02/02/2012 | 01/2012 | 4648 | 11902 |
| 04/25/2012 | 04/2012 | 4575 | 12079 |
| 05/24/2012 | 05/2012 | 4780 | 12253 |
| 06/22/2012 | 06/2012 | 4717 | 12091 |
| 07/26/2012 | 07/2012 | 4905 | 12018 |
| 08/29/2012 | 08/2012 | 4876 | 12054 |
| 10/12/2012 | 09/2012 | 4788 | 11891 |
| 10/24/2012 | 10/2012 | 4654 | 11774 |
| 11/27/2012 | 11/2012 | 4822 | 11803 |

| | | | |
|---|---|---|---|
| 01/23/2013 | 01/2013 | 4817 | 11662 |
| 02/22/2013 | 02/2013 | 4965 | 11907 |
| 04/25/2013 | 04/2013 | 5038 | 12409 |
| 08/02/2013 | 07/2013 | 5360 | 12557 |

54.  This chart, therefore, shows that the Defendants misrepresented the number of lines each month.

55.  The Defendants further represented on each of these E-911 Service Fee Transmittal Forms that: "The undersigned certifies that the information on this transmittal form is true and complete and subject to audit under the 9-1-1 provider."

56.  As set forth in detail above and despite the "truthfulness" certification, the Defendants significantly under-reported the number of lines on the E-911 Service Fee Transmittal Form each month. In fact, based on the District's investigation, the Defendants were under-reporting the "number of lines" by approximately seven thousand each month.[1]

57.  The District reasonably relied on the false information provided by the Defendants on the E-911 Service Fee Transmittal Forms in accepting the 911 Charge remittances.

---

[1] The District is no longer in possession of the E-911 Service Fee Transmittal Forms pertaining to the following reporting periods: February 2012, March 2012, December 2012, March 2013, May 2013, June 2013, August 2013, September 2013, and for the months before October 2011. Through its investigation, however, the District has learned that the Defendants failed to remit the proper amount of 911 Charges in those months as well. Furthermore, those Transmittal Forms made misrepresentations similar to those reflected in the chart in ¶ 53.

58. The information supplied by the Defendants was material to the District because the District relies upon 911 Charges to fund its operations, pay its employees, and provide emergency services. Moreover, the District has little to no information about the Defendants' service offerings within Birmingham, other than what the Defendants provide to the District. As a result, the District had no means to independently verify or ensure the accuracy of the information supplied by the Defendants. The District was, therefore, at the mercy of the Defendants to act in good faith and with honesty and truthfulness in reporting information to the District.

59. Because of the lack of information available to the District about the Defendants' services in Birmingham, the District did not discover and could not have discovered the Defendants' misrepresentations until the Defendants provided more complete and accurate information about their services during a recent audit conducted by the District.

60. The Defendants' false representations proximately caused injury and damages to the District, including the loss of operating and capital funds and an impairment of the ability to provide 911 services.

61. WHEREFORE, the District demands judgment against the Defendants for compensatory and punitive damages in an amount to be determined by a struck jury plus interest, attorneys' fees and costs.

## PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY

This the 2nd day of November, 2017.

    s/ W. Percy Badham III
W. Percy Badham III (ASB-2147-D51W)
pbadham@badhambuck.com
Brannon J. Buck (ASB-5848-K56B)
bbuck@badhambuck.com
Brett A. Ialacci (ASB-7679-E67I)
bialacci@badhambuck.com
Christopher B. Driver (ASB-9178-G39B)
cdriver@badhambuck.com

OF COUNSEL:
BADHAM & BUCK, LLC
2001 Park Place North, Ste. 500
Birmingham, Alabama 35203
Telephone: (205) 521-0036
Facsimile: (205) 521-0037

Freddy Rubio (ASB-5403-D62R)
frubio@rubiofirm.com
Leslie A. Wright (ASB-7190-E56W)
lwright@rubiofirm.com
RUBIO LAW FIRM, P.C.
438 Carr Ave, Suite 1
Birmingham, Alabama 35209
Telephone: (205) 443-7858
Facsimile: (205) 443-7853

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served on the following via the CM/ECF E-Filing System and/or electronic mail on the 2nd day of Nov., 2017:

Rachel M. Lary
David A. Rich
Lightfoot, Franklin & White, LLC
The Clark Building
400 North 20th Street
Birmingham, Alabama 35203
Telephone: (205) 581-0700
Facsimile: (205) 581-0799
srowe@lightfootlaw.com
rlary@lightfootlaw.com
drich@lightfootlaw.com

                                               s/ W. Percy Badham III
                                               OF COUNSEL